Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178

*Counsel for Plaintiffs*



**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

JOSHUA RALPH, and THE RUMOR MILL, LLC;

    *Plaintiffs*,

    v.

STANLEY BUCHTAL; THE DAKOTA GROUP, LTD.; SUBMARINE ENTERTAINMENT, LLC; DAVID KOH; DAN BRAUN; BONNIE GREENBERG and LISA IMMORDINO VREELAND;

    *Defendants.*

Case No.

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

---

Plaintiffs JOSHUA RALPH and THE RUMOR MILL, LLC ("Plaintiffs"), by and through undersigned counsel, pursuant to the applicable Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York, hereby demand a trial by jury of all claims and issues so triable and for their Complaint against Defendants STANLEY BUCHTAL; THE DAKOTA GROUP, LTD.; SUBMARINE ENTERTAINMENT, LLC; DAVID KOH; DAN BRAUN; BONNIE GREENBERG and LISA IMMORDINO VREELAND (collectively "Defendants"); hereby assert and allege as follows:

1

## JURISDICTION AND VENUE

1.      This is an action for copyright infringement and related claims brought by Plaintiffs against Defendants for Defendants' unauthorized and infringing uses of Plaintiffs' copyrighted musical compositions and master recordings ("Plaintiffs' Music") in a documentary film entitled "*Peggy Guggenheim: Art Addict*" (referred to herein as the "Film" or the "Infringing Film").

2.      Jurisdiction for Plaintiffs' claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*; 28 U.S.C. § 1331 (conferring original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"); and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights); and 28 U.S.C. § 1367 (conferring supplemental jurisdiction over Plaintiff Ralph's state law claim).

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) since Defendants either reside in this District and/or a substantial portion of the misconduct by Defendants giving rise to the claims asserted herein occurred in this District, and 28 U.S.C. § 1400(a) since Defendants reside in or may be found in this District.  Further, Defendants conduct substantial business in this District and Defendants are subject to personal jurisdiction in the State of New York.  Plaintiff Ralph created and recorded the copyrighted works that are the subject of this litigation in this District, and Defendants have infringed Plaintiffs' copyrights in the State of New York and in this District.

## FACTUAL ALLEGATIONS

4.      Plaintiff Joshua Ralph ("Ralph"), a resident of the State of New York, is a world-renowned professional composer and musician who makes his living creating and recording film scores and other musical compositions.

5.      Plaintiff Ralph is more widely known by his professional name, J. Ralph.

6.     Plaintiff Ralph has written and produced songs for some of the most prolific and well-respected musical artists in the world.

7.     In the last seven years, Plaintiff Ralph has scored six films that have been nominated for or received an Oscar® from the Academy of Motion Picture Arts and Sciences.

8.     These films include *Virunga*, *Finding Vivian Maier*, *Chasing Ice*, *Hell and Back Again*, *The Cove* and *Man on Wire*.

9.     Plaintiff Ralph was nominated for an Oscar for Best Original Song for his song "Before My Time" in the film *Chasing Ice*.

10.    Plaintiff Ralph's work has been nominated for and received several other prestigious awards and accolades.

11.    Plaintiff The Rumor Mill, LLC ("Rumor Mill") is a New York limited liability company with its principal place of business in New York City.

12.    Plaintiffs have registered copyright in all of the musical compositions and master recordings that are the subject of this suit.

13.    A chart identifying the music and copyright registrations in issue is attached hereto as "Exhibit 1."

14.    Plaintiff Ralph is the registered copyright owner of 32 of the works is issue in this suit, as identified in Exhibit 1.

15.    Plaintiff Rumor Mill is the registered copyright owner of 6 of the works is issue in this suit, as identified in Exhibit 1.

16.    Defendant Stanley Buchtal ("Buchtal") is a resident of the State of New York.

17.    Defendant Buchtal is a producer of the Infringing Film.

18.    Upon information and belief, Defendant Buchtal exercised control over the decision to include Plaintiffs' Music in the Infringing Film without fulfilling the conditions

3

necessary to obtain a license from, or payment to, Plaintiffs.

19.     Upon information and belief, Defendant Buchtal exercised control over the decision to use Plaintiff Ralph's name in the Infringing Film and in promotion for the Infringing Film without permission from, or payment to, Plaintiff Ralph.

20.     Defendant Dakota Group, Ltd. ("Dakota Group") is a New York Corporation with its principal place of business at 425 Park Avenue, New York, New York 10022.

21.     Defendant Dakota Group is a production company involved in the production of the Infringing Film.

22.     Upon information and belief, Defendant Dakota Group exercised control over the decision to include Plaintiffs' Music in the Infringing Film without fulfilling the conditions necessary to obtain a license from, or payment to, Plaintiffs.

23.     Upon information and belief, Defendant Dakota Group exercised control over the decision to use Plaintiff Ralph's name in the Infringing Film and in promotion for the Infringing Film without permission from, or payment to, Plaintiff Ralph.

24.     Defendant Submarine Entertainment, LLC ("Submarine") is a New York Limited Liability Company with its principal place of business at 197 Grand Suite 6W, New York, New York 10013.

25.     Upon information and belief, Defendant Submarine exercised control over the decision to include Plaintiffs' Music in the Infringing Film without fulfilling the conditions necessary to obtain a license from, or payment to, Plaintiffs.

26.     Upon information and belief, Defendant Submarine exercised control over the decision to use Plaintiff Ralph's name in the Infringing Film and in promotion for the Infringing Film without permission from, or payment to, Plaintiff Ralph.

27.     Defendant David Koh ("Koh") is a resident of the State of New York.

4

28.     Defendant Koh is a producer of the infringing film.

29.     Upon information and belief, Defendant Koh exercised control over the decision to include Plaintiffs' Music in the Infringing Film without fulfilling the conditions necessary to obtain a license from, or payment to, Plaintiffs.

30.     Upon information and belief, Defendant Koh exercised control over the decision to use Plaintiff Ralph's name in the Infringing Film and in promotion for the Infringing Film without permission from, or payment to, Plaintiff Ralph.

31.     Defendant Dan Braun ("Braun") is a resident of the State of New York.

32.     Defendant Braun is a producer of the infringing film.

33.     Upon information and belief, Defendant Braun exercised control over the decision to include Plaintiffs' Music in the Infringing Film without fulfilling the conditions necessary to obtain a license from, or payment to, Plaintiffs.

34.     Upon information and belief, Defendant Braun exercised control over the decision to use Plaintiff Ralph's name in the infringing film and in promotion for the infringing film without permission from, or payment to, Plaintiff Ralph.

35.     Defendant Bonnie Greenberg ("Greenberg") is a resident of the State of California.

36.     Defendant Greenberg is the Executive Music Supervisor for the Infringing Film.

37.     Upon information and belief, Defendant Greenberg exercised control in this District over the decision to include Plaintiffs' Music in the Infringing Film without fulfilling the conditions necessary to obtain a license from, or payment to, Plaintiffs.

38.     Upon information and belief, Defendant Greenberg exercised control in this District over the decision to use Plaintiff Ralph's name in the Infringing Film and in promotion for the Infringing Film without permission from, or payment to, Plaintiff Ralph.

39.     Defendant Lisa Immordino Vreeland ("Immordino Vreeland ") is a resident of the

5

State of New York.

40.    Defendant Immordino Vreeland is the Director of the Infringing Film.

41.    Upon information and belief, Defendant Immordino Vreeland exercised control over the decision to include Plaintiffs' Music in the Infringing Film without fulfilling the conditions necessary to obtain a license from, or payment to, Plaintiffs.

42.    Upon information and belief, Defendant Immordino Vreeland exercised control over the decision to use Plaintiff Ralph's name in the Infringing Film and in promotion for the Infringing Film without permission from, or payment to, Plaintiff Ralph.

43.    Prior to the infringing uses at issue in this case, Defendants sought permission to use Plaintiffs' Music in the Infringing Film.

44.    Plaintiffs provided Defendants with a payment term for such usage, and with terms and conditions for the proposed usage.  A copy of those terms and conditions are attached as "Exhibit 2".

45.    Plaintiff Ralph advised Defendants that any use of Plaintiffs' Music without prior payment and acceptance of his terms would constitute willful copyright infringement.

46.    Defendants refused to accept Plaintiffs' terms for usage, and proceeded to include Plaintiffs' Music in the Infringing Film.

47.    Plaintiff Ralph instructed Defendants to remove Plaintiffs' Music from the Infringing Film and not to use Plaintiffs' Music under any circumstance without first accepting his terms and conditions and making payment.

48.    Upon information and belief, Defendants infringed Plaintiffs' exclusive rights in and to Plaintiffs' Music by exploiting Plaintiffs' Music without permission; using Plaintiffs' Music prior to obtaining permission; and exploiting Plaintiffs' Music in excess of applicable license restrictions.

6

49. Prior to the infringements at issue in this case, Defendants were on notice that the music in issue belonged to Plaintiffs.

50. Defendants also were on notice that any use of Plaintiffs' Music required prior permission from Plaintiffs and fulfillment of the conditions necessary to obtain a license, including Defendants' agreement to Plaintiffs' terms and conditions of use of Plaintiffs' Music and payment of required license fees.

51. These conditions include payment of the agreed upon license fees in advance of use and sole composer credit for any film scored by Plaintiff Ralph.

52. In April of 2015, the Defendants collectively incorporated 38 pieces of Plaintiffs' Music covered by copyright registrations identified in Exhibit 1 into the Infringing Film.

53. In total, Plaintiffs' Music appears in the Infringing Film for approximately 50 minutes.

## COUNT I
## COPYRIGHT INFRINGEMENT
## (BOTH PLAINTIFFS AGAINST ALL DEFENDANTS)

54. Plaintiffs repeat and re-allege each allegation set forth in all paragraphs above as if set forth fully herein.

55. Plaintiff Ralph created Plaintiffs' Music identified herein.

56. Plaintiffs' copyrights in and to Plaintiffs' Music identified herein are registered with the U.S. Copyright Office.

57. Defendants infringed Plaintiffs' exclusive rights in and to Plaintiffs' Music identified herein.

58. Upon information and belief, Defendants infringed Plaintiffs' exclusive rights in

7

and to their creative works by exploiting Plaintiffs' Music without permission; using Plaintiffs' Music prior to obtaining permission; and exploiting Plaintiffs' Music in excess of applicable license restrictions.

59.     Defendants' conduct as alleged herein constitutes infringement of Plaintiff's copyrights.

60.     Defendants misappropriated and made unauthorized uses of Plaintiffs' intellectual property for their own profit.

61.     Defendants have benefitted and continue to financially benefit from their various uncompensated and infringing uses of Plaintiffs' creative works.

62.     Defendants' conduct was intentional, willful, reckless, and/or malicious.

63.     Defendants, by these various willful and knowing actions, injured Plaintiffs, including by depriving Plaintiffs of their rightful compensation for the use of these creative works and by interfering with and violating Plaintiffs' exclusive rights in and to these compositions.

64.     Defendants' unauthorized and infringing conduct caused Plaintiffs significant injuries, damages, and losses in amounts to be determined at trial.

65.     Defendants' efforts to attempt to ratify their unauthorized use of Plaintiffs' creative works by attempting to obtain licenses after they already began using Plaintiffs' Music demonstrates that they were fully aware that their use of these compositions required a license and thus that their use without or prior to obtaining a license was unauthorized and thus infringing.

66.     Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages and Defendant's profits attributable to the infringing use of Plaintiffs' creative works and the damages suffered as a result of the lack of compensation, credit, and attribution. Plaintiffs also seeks all attorneys' fees and any other costs incurred in pursuing and litigating this matter.

8

## COUNT II
### RIGHT OF PUBLICITY
### (PLAINTIFF RALPH AGAINST ALL DEFENDANTS)

67.     Plaintiffs repeat and re-allege each allegation set forth in the prior paragraphs as if set forth fully herein.

68.     Pursuant to N.Y. CVR. Law § 51, Defendants were prohibited from using Plaintiff Ralph's name or likeness in advertising or promoting their Film without his written permission.

69.     Notwithstanding this prohibition, Defendants used Plaintiff Ralph's name in the Infringing Film and in promotional materials created for the purposes of marketing and selling the film.

70.     Defendants also used Plaintiff Ralph's name in promoting and marketing the Infringing Film at the Tribeca Film Festival.

71.     Defendant's unauthorized promotional efforts included inaccurate representations that Plaintiff Ralph was a co-composer of the Infringing Film.

72.     In addition to using his name to promote and sell their Film, Defendants damaged Plaintiff Ralph's reputation by making such inaccurate representations.

73.     Defendants' promotional and marketing activities constitute a violation of Plaintiff Ralph rights of privacy and publicity under New York law.

74.     Plaintiff Ralph seeks all allowable damages under all applicable law, including N.Y. CVR. Law § 51.

**WHEREFORE,** Plaintiffs respectfully pray for judgment and for the following relief:

9

1.     A preliminary and permanent injunction against Defendants and anyone working in concert with Defendants from copying, displaying, distributing, advertising, promoting, selling or offering to sell Plaintiffs' Music or creating, obtaining and using substantially similar music in any of the preceding ways and to deliver to the Court for destruction or other appropriate disposition of all materials, including digital files containing Plaintiffs' Music described in this complaint in the control or possession of Defendants;

2.     All allowable damages under the Copyright Act, including, but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiffs' loss of licensing revenue, and Defendants' profits attributable to infringement and damages suffered as a result of the lack of credit and attribution;

3.     Plaintiffs' full costs, including litigation expenses, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

4.     All allowable damages caused by and/or resulting from Defendants' violation and infringement of Plaintiffs' rights in and to their creative works;

5.     All allowable damages under N.Y. CVR. Law § 51 caused by and/or resulting from Defendants' violation of Plaintiff Ralph's right of publicity.

6.     Any other relief authorized by law, including punitive and/or exemplary damages; and

7.     For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Dated April 29, 2015
New York, New York.

Respectfully submitted,

NELSON & McCULLOCH LLP

By:

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178

*Counsel for Plaintiffs*

11

# EXHIBIT 1

### Peggy Guggenheim – Art Addict

Music Cues – APRIL 8, 2015

#### J. Ralph Compositions Including Repeating Cues

| Cue | Reference Title | Original Registartion Title Title | Registration # | Registration Filing Date | Claimant | Composer | Timecode In | Timecode out | Duration |
|---|---|---|---|---|---|---|---|---|---|
| #1 | pg_cue_01_ver_1_0_tc_01_00_00_17 | Botw Right Now Version 01.0 | SRu001057921 | 2/2/2012 | The Rumor Mill | J. Ralph | 01:00:00:00 | 01:00:48:09 | 48s |
| #2 | pg_cue_02_ver_3_0_tc_01_00_48_08 | Once Again | Awating Registration Number | 4/13/2015 | Joshua Lee Ralph | J. Ralph | 01:00:48:10 | 01:04:33:23 | 3m45s |
| #3 | jralph_trm_music_32_0 | FVM Cue 35 Version 01.0 | SRu001135745 | 8/28/2013 | Joshua Lee Ralph | J. Ralph | 01:05:04:12 | 01:06:45:10 | 1m41s |
| #4 | jralph_trm_music_07_0 | Cue One Ver 1 | SRu000604228 | 11/14/2005 | Joshua Ralph | J. Ralph | 01:07:07:17 | 01:08:07:10 | 1m |
| #5 | jralph_trm_music_08_0 | 5m2 Wrapup Part 1 | SRu000604228 | 11/14/2005 | Joshua Ralph | J. Ralph | 01:08:20:01 | 01:09:25:05 | 1m5s |
| #5 (a) | pg_cue_05a_ver_1_0_tc_01_10_23_08 | Axe Twist Version 02.0 | SRu001091481 | 7/17/2012 | The Rumor Mill | J. Ralph | 01:10:23:08 | 01:11:06:22 | 43s |
| #8 | jralph_trm_music_11_0 | Radiant Child Cue 3 Version 1 | SRu000672494 | 10/20/2010 | Joshua Ralph | J. Ralph | 01:17:10:09 | 01:19:32:19 | 2m22s |
| #10 | jralph_trm_music_18_0 | Benjamin Long | SRu000585325 | 1/14/2005 | Joshua Ralph | J. Ralph | 01:20:55:13 | 01:22:31:08 | 1m36s |
| #11 | pg_cue_11_ver_1_0_tc_01_23_05_10 | FVM Cue 22 Version 01.0 | SRu001135745 | 8/28/2013 | Joshua Lee Ralph | J. Ralph | 01:23:05:15 | 01:25:46:02 | 2m40s |
| #12 | pg_cue_12_ver_1_0_tc_01_26_29_11 | East Coast Trains Version 07.0 | SRu001057921 | 2/2/2012 | The Rumor Mill | J. Ralph | 01:26:29:11 | 01:28:07:11 | 1m38s |
| #13 | This Light Won't Last Forever | Chasing Ice Cue 02 | SRu001055313 | 1/17/2012 | Joshua Lee Ralph | J. Ralph | 01:28:26:11 | 01:28:54:12 | 28s |
| #14 | jralph_trm_music_04_0 | 2m3 Investigation | SRu000604228 | 11/14/2005 | Joshua Ralph | J. Ralph | 01:30:33:11 | 01:30:56:08 | 23s |
| #15 | This Light Won't Last Forever | Chasing Ice Cue 02 | SRu001055313 | 1/17/2012 | Joshua Lee Ralph | J. Ralph | 01:30:59:17 | 01:31:38:17 | 39s |
| #16 | This Light Won't Last Forever | Chasing Ice Cue 02 | SRu001055313 | 1/17/2012 | Joshua Lee Ralph | J. Ralph | 01:32:19:04 | 01:32:48:15 | 29s |
| #17 | pg_cue_17_ver_1_0_tc_01_33_01_00 | W&J Cue 25 Japan Wretchspeak Debrief | SRu001001924 | 1/13/2011 | Joshua Lee Ralph | J. Ralph | 01:33:01:01 | 01:34:01:13 | 1m |
| #18 | jralph_trm_music_36_0 | Mow Cue 8 Final Mix End Title | SRu000948396 | 7/28/2008 | Joshua Ralph | J. Ralph | 01:34:55:09 | 01:35:41:22 | 46s |
| #19 | jralph_trm_music_08_0 | 5m2 Wrapup Part 1 | SRu000604228 | 11/14/2005 | Joshua Ralph | J. Ralph | 01:35:43:22 | 01:37:33:20 | 1m39s |
| #20 | jralph_trm_music_20_0 | Boss Snaps | SRu000604228 | 11/14/2005 | Joshua Ralph | J. Ralph | 01:38:01:12 | 01:38:33:02 | 31s |
| #21 | jralph_trm_music_40_0 | Oscars Opening Ver 7 | SRu000984949 | 4/9/2009 | Joshua Ralph | J. Ralph | 01:39:06:11 | 01:40:46:15 | 1m39s |
| #22 | A Bigger Story | Texting Cue 04 Ch 1.0 | SRu001091481 | 7/17/2012 | The Rumor Mill | J. Ralph | 01:41:15:00 | 01:43:00:16 | 1m45s |
| #23 | pg_cue_23_ver_1_0_tc_01_43_11_13 | Catskills Romp | SRu000604228 | 11/14/2005 | Joshua Ralph | J. Ralph | 01:43:02:07 | 01:43:43:04 | 41s |
| #24 | pg_cue_24_ver_1_0_tc_01_43_52_20 | Radiant Child Cue 5 Version 1 | SRu000672494 | 10/20/2010 | Joshua Ralph | J. Ralph | 01:43:52:16 | 01:45:08:07 | 1m15s |
| #25 | pg_cue_25_ver_1_0_tc_01_46_41_02 +5 | W&J Cue 04 Travel Theme | SRu001001924 | 1/13/2011 | Joshua Lee Ralph | J. Ralph | 01:46:40:11 | 01:48:44:17 | 2m4s |
| #27 | pg_cue_27_ver_1_0_tc_01_50_57_13 | FVM Cue 04 Version 01.0 | SRu001135745 | 8/28/2013 | Joshua Lee Ralph | J. Ralph | 01:50:57:21 | 01:51:48:12 | 50s |
| #29 | pg_cue_29_ver_1_0_tc_01_53_58_20 | Italian Woman | SRu000561499 | 4/8/2004 | The Rumor Mill | J. Ralph | 01:53:58:22 | 01:54:31:04 | 32s |
| #30 | jralph_trm_music_06_0 | 4m1 Restaurant Date | SRu000602998 | 11/14/2005 | Joshua Ralph | J. Ralph | 01:55:30:05 | 01:56:42:02 | 1m11s |
| #31 | jralph_trm_music_29_0 | Front Street | SRu000590937 | 7/18/2005 | Joshua Ralph | J. Ralph | 01:57:02:15 | 01:58:09:12 | 1m6s |
| #32 | jralph_trm_music_39_0 | Oscars Opening Ver 3 | SRu000984949 | 4/9/2009 | Joshua Ralph | J. Ralph | 01:59:24:10 | 02:00:43:10 | 1m19s |
| #33 | pg_cue_33_ver_1_0_tc_02_00_51_17 | FVM Cue 04 Version 01.0 | SRu001135745 | 8/28/2013 | Joshua Lee Ralph | J. Ralph | 02:00:51:23 | 02:01:32:20 | 40s |
| #34 | pg_cue_34_ver_1_0_tc_02_02_52_17 | 2m2 Bad Things In 3s | SRu000602998 | 11/14/2005 | Joshua Ralph | J. Ralph | 02:02:52:23 | 02:06:33:09 | 3m40s |
| #35 | jralph_trm_music_27_0 | Coke Downpour Opt 7.2 JR Fav | SRu000667952 | 6/27/2007 | Rumor Mill | J. Ralph | 02:09:04:18 | 02:09:20:14 | 16s |
| #36 | pg_cue_36_ver_1_0_tc_02_09_22_20 | Slevin Boss | SRu000604228 | 11/14/2005 | Joshua Ralph | J. Ralph | 02:09:22:12 | 02:11:30:11 | 2m8s |
| #40 | For My Daughters | Kia Bicycle Version 01.0 | SRu001091481 | 7/17/2012 | The Rumor Mill | J. Ralph | 02:15:12:02 | 02:15:22:22 | 11s |
| #41 | pg_cue_41_ver_1_0_tc_02_15_22_18 | Tango Loco | PAu002679778 | 7/1/2002 | Joshua Ralph | J. Ralph | 02:15:22:12 | 02:16:33:17 | 1m11s |
| #45 | jralph_trm_music_50_0 | W&J Cue 14 Wretchspeak (Temple) | SRu001001924 | 1/13/2011 | Joshua Lee Ralph | J. Ralph | 02:25:17:11 | 02:26:57:09 | 1m39s |
| #47 | When She Dances (Bonus Track) | When She Dances | SRu000547486 | 4/8/2004 | Joshua Ralph | J. Ralph | 02:29:46:02 | 02:30:50:17 | 1m4s |
| #48 | pg_cue_48_ver_1_0_tc_02_30_37_20 | PG Cue 48 Version 1.0 | Awating Registration Number | 4/13/2015 | Joshua Lee Ralph | J. Ralph | 02:30:37:20 | 02:31:41:18 | 1m30s |
| #49 | Once Again (End Title) | Once Again | Awating Registration Number | 4/13/2015 | Joshua Lee Ralph | J. Ralph | 02:31:41:18 | 02:34:27:10 | 2m46s |

*Peggy Guggenheim – Art Addict*

Music Cues – APRIL 8, 2015

### J. Ralph Compositions Non-Repeating Cues

| Cue | Reference Title | Original Registartion Title Title | Registration # | Registration Filing Date | Claimant | Composer | Timecode In | Timecode out | Duration |
|---|---|---|---|---|---|---|---|---|---|
| #1 | pg_cue_01_ver_1_0_tc_01_00_00_17 | Botw Right Now Version 01.0 | SRu001057921 | 2/2/2012 | The Rumor Mill | J Ralph | 01:00:00:00 | 01:00:48:09 | 48s |
| #2 | pg_cue_02_ver_3_0_tc_01_00_48_08 | Once Again | wating Registration Numb | 4/13/2015 | Joshua Lee Ralph | J Ralph | 01:00:48:10 | 01:04:33:23 | 3m45s |
| #3 | jralph_trm_music_32_0 | FVM Cue 35 Version 01.0 | SRu001135745 | 8/28/2013 | Joshua Lee Ralph | J Ralph | 01:05:04:12 | 01:06:45:10 | 1m41s |
| #4 | jralph_trm_music_07_0 | Cue One Ver 1 | SRu000604228 | 11/14/2005 | Joshua Ralph | J Ralph | 01:07:07:17 | 01:08:07:10 | 1m |
| #5 (a) | pg_cue_05a_ver_1_0_tc_01_10_23_08 | Axe Twist Version 02.0 | SRu001091481 | 7/17/2012 | The Rumor Mill | J Ralph | 01:10:23:08 | 01:11:06:22 | 43s |
| #8 | jralph_trm_music_11_0 | Radiant Child Cue 3 Version 1 | SRu000672494 | 10/20/2010 | Joshua Ralph | J Ralph | 01:17:10:09 | 01:19:32:19 | 2m22s |
| #10 | jralph_trm_music_18_0 | Benjamin Long | SRu000585325 | 1/14/2005 | Joshua Ralph | J Ralph | 01:20:55:13 | 01:22:31:08 | 1m36s |
| #11 | pg_cue_11_ver_1_0_tc_01_23_05_10 | FVM Cue 22 Version 01.0 | SRu001135745 | 8/28/2013 | Joshua Lee Ralph | J Ralph | 01:23:05:15 | 01:25:46:02 | 2m40s |
| #12 | pg_cue_12_ver_1_0_tc_01_26_29_11 | East Coast Trains Version 07.0 | SRu001057921 | 2/2/2012 | The Rumor Mill | J Ralph | 01:26:29:11 | 01:28:07:11 | 1m38s |
| #14 | jralph_trm_music_04_0 | 2m3 Investigation | SRu000604228 | 11/14/2005 | Joshua Ralph | J Ralph | 01:30:33:11 | 01:30:56:08 | 23s |
| #15 | This Light Won't Last Forever | Chasing Ice Cue 02 | SRu001055313 | 1/17/2012 | Joshua Lee Ralph | J Ralph | 01:30:59:17 | 01:31:38:17 | 39s |
| #17 | pg_cue_17_ver_1_0_tc_01_33_01_00 | W&J Cue 25 Japan Wretchspeak Debrief | SRu001001924 | 1/13/2011 | Joshua Lee Ralph | J Ralph | 01:33:01:01 | 01:34:01:13 | 1m |
| #18 | jralph_trm_music_36_0 | Mow Cue 8 Final Mix End Title | SRu000948396 | 7/28/2008 | Joshua Ralph | J Ralph | 01:34:55:09 | 01:35:41:22 | 46s |
| #19 | jralph_trm_music_08_0 | 5m2 Wrapup Part 1 | SRu000604228 | 11/14/2005 | Joshua Ralph | J Ralph | 01:35:43:22 | 01:37:33:20 | 1m39s |
| #20 | jralph_trm_music_20_0 | Boss Snaps | SRu000604228 | 11/14/2005 | Joshua Ralph | J Ralph | 01:38:01:12 | 01:38:33:02 | 31s |
| #21 | jralph_trm_music_40_0 | Oscars Opening Ver 7 | SRu000984949 | 4/9/2009 | Joshua Ralph | J Ralph | 01:39:06:11 | 01:40:46:15 | 1m39s |
| #22 | A Bigger Story | Texting Cue 04 Ch 1.0 | SRu001091481 | 7/17/2012 | The Rumor Mill | J Ralph | 01:41:15:00 | 01:43:00:16 | 1m45s |
| #23 | pg_cue_23_ver_1_0_tc_01_43_11_13 | Catskills Romp | SRu000604228 | 11/14/2005 | Joshua Ralph | J Ralph | 01:43:02:07 | 01:43:43:04 | 41s |
| #24 | pg_cue_24_ver_1_0_tc_01_43_52_20 | Radiant Child Cue 5 Version 1 | SRu000672494 | 10/20/2010 | Joshua Ralph | J Ralph | 01:43:52:16 | 01:45:08:07 | 1m15s |
| #25 | pg_cue_25_ver_1_0_tc_01_46_41_02 +5 | W&J Cue 04 Travel Theme | SRu001001924 | 1/13/2011 | Joshua Lee Ralph | J Ralph | 01:46:40:11 | 01:48:44:17 | 2m4s |
| #27 | pg_cue_27_ver_1_0_tc_01_50_57_13 | FVM Cue 04 Version 01.0 | SRu001135745 | 8/28/2013 | Joshua Lee Ralph | J Ralph | 01:50:57:21 | 01:51:48:12 | 50s |
| #29 | pg_cue_29_ver_1_0_tc_01_53_58_20 | Italian Woman | SRu000561499 | 4/8/2004 | The Rumor Mill | J Ralph | 01:53:58:22 | 01:54:31:04 | 32s |
| #30 | jralph_trm_music_06_0 | 4m1 Restaurant Date | SRu000602998 | 11/14/2005 | Joshua Ralph | J Ralph | 01:55:30:05 | 01:56:42:02 | 1m11s |
| #31 | jralph_trm_music_29_0 | Front Street | SRu000590937 | 7/18/2005 | Joshua Ralph | J Ralph | 01:57:02:15 | 01:58:09:12 | 1m6s |
| #32 | jralph_trm_music_39_0 | Oscars Opening Ver 3 | SRu000984949 | 4/9/2009 | Joshua Ralph | J Ralph | 01:59:24:10 | 02:00:43:10 | 1m19s |
| #34 | pg_cue_34_ver_1_0_tc_02_02_52_17 | 2m2 Bad Things In 3s | SRu000602998 | 11/14/2005 | Joshua Ralph | J Ralph | 02:02:52:23 | 02:06:33:09 | 3m40s |
| #35 | jralph_trm_music_27_0 | Coke Downpour Opt 7.2 JR Fav | SRu000667952 | 6/27/2007 | Rumor Mill | J Ralph | 02:09:04:18 | 02:09:20:14 | 16s |
| #36 | pg_cue_36_ver_1_0_tc_02_09_22_20 | Slevin Boss | SRu000604228 | 11/14/2005 | Joshua Ralph | J Ralph | 02:09:22:12 | 02:11:30:11 | 2m8s |
| #40 | For My Daughters | Kia Bicycle Version 01.0 | SRu001091481 | 7/17/2012 | The Rumor Mill | J Ralph | 02:15:12:02 | 02:15:22:22 | 11s |
| #41 | pg_cue_41_ver_1_0_tc_02_15_22_18 | Tango Loco | PAu002679778 | 7/1/2002 | Joshua Ralph | J Ralph | 02:15:22:12 | 02:16:33:17 | 1m11s |
| #45 | jralph_trm_music_50_0 | W&J Cue 14 Wretchspeak (Temple) | SRu001001924 | 1/13/2011 | Joshua Lee Ralph | J Ralph | 02:25:17:11 | 02:26:57:09 | 1m39s |
| #47 | When She Dances (Bonus Track) | When She Dances | SRu000547486 | 4/8/2004 | Joshua Ralph | J Ralph | 02:29:46:02 | 02:30:50:17 | 1m4s |
| #48 | pg_cue_48_ver_1_0_tc_02_30_37_20 | PG Cue 48 Version 1.0 | Awating Registration Number | 4/13/2015 | Joshua Lee Ralph | J Ralph | 02:30:37:20 | 02:31:41:18 | 1m30s |

# EXHIBIT 2

**Sugar Bear Deluxe Music Publishing, LLC**
**332 Bleecker Street, 9F**
**New York, NY 10014**

### Documentary Score License Agreement

This agreement ("Agreement"), dated as of April 17th 2015, will confirm the understanding between Licensee (as defined below) and Sugar Bear Deluxe Music Publishing LLC ("Licensor") concerning Licensor's one hundred (100%) percent interest in the music publishing rights in and to those musical compositions (the "Compositions") licensed hereunder, as well as the understanding between Licensee and Licensor concerning Licensor's one hundred (100%) percent interest in and ownership of the master recordings (the "Masters") licensed hereunder, which each embodies a performance of the applicable Composition.

1.      Compositions/Masters:  The Compositions covered by this license are as set forth on the Cue Sheet Schedule A, attached hereto and made a part hereof.  The Masters covered by this license are also as set forth on Schedule A.  The type, duration and number of uses of each Composition and each Master are: BI/VI, up to the full natural playing time of each Composition and each Master, and a mutually agreed number of uses of each in the Film.  For the avoidance of doubt, the parties acknowledge that the aggregate playing time of the Score (with some Compositions and Masters being repeated) will be in the range of 40 - 50 minutes.

2.      Motion Picture  The motion picture ("Film") covered by this license is: **PEGGY GUGGENHIEM: ART ADDICT** a feature-length documentary motion picture.

3.      Services       Licensor agrees that it will provide a final score created from the Compositions and Masters licensed hereunder, which the parties intend shall be the complete background score for the Film (the "Score") and, after completion of all spotting and recording sessions, as applicable, provide Licensee with exact time-code positions of the Masters to enable synchronization of Score with the exact locations of the visual images on the screen.

4.      Territory       The territory ("Territory") covered hereby is: The World

5.      Fees and Grant of Rights

        (a)     In consideration of the payment of a "License Fee" of Fifty Thousand Dollars ($50,000.00) and the "Contingent License Fee" (as defined below) and for other good and valuable consideration the receipt whereof is hereby acknowledged, Licensor, with respect each Composition and each Master, does hereby irrevocably grant to "**DAKOTA GROUP LTD**", its successors and assigns (hereinafter collectively referred to as "Licensee") the following rights ("the Rights"):

        (i)     the non-exclusive, limited right, license, privilege, and authority to record in any manner, medium, form or language, in each country of the Territory the type and use of the Compositions set forth on Schedule A and to use the Masters in perpetuity in synchronism or in timed-relation with the Film (and in-context trailers, as more fully set forth in paragraph 11, below), but not otherwise, and to make copies of such recordings in the form of negatives, prints and other forms necessary for exhibition or broadcast in all media now known or hereafter devised throughout the Territory as hereinafter provided for, and import said recordings and/or copies thereof into any country throughout the Territory all in accordance with the terms, conditions and limitations hereinafter set forth; and

        (ii)    the non-exclusive, limited right and license to publicly perform for profit or non-profit and authorize others so to perform the Compositions in the exhibition of the Film and in-context trailers to audiences in motion picture theaters and other places of public entertainment where motion pictures are customarily exhibited in the United States and its possessions (the "U.S.") including the right to televise the Film into such theaters and such other public places, with the understanding and upon condition that the Film shall not be exhibited in the U.S. by means of television for any other purpose whatsoever, until and unless licensed therefore as hereinafter provided.

(b)     Licensee acknowledges that the entire music budget for this film is far less then the composer's standard composer fee. Consequently, Licensee further agrees to pay contingent compensation to Licensor in the form of a "Contingent License Fee" which shall be deemed an Investment in the Film and shall be paid and treated in all respects on a most favored-nations-basis with all other "Investments" in the Film. It is acknowledged that the Gross Revenues shall be defined as all revenue received by Licensee from whatever source in connection with the distribution and/or exploitation of the Film (including but not limited to advances) and that Net Profit shall be defined as all Gross Revenue less only Producer's actual out-of-pocket expenses incurred in producing and marketing the Film. Licensor shall receive on at least a quarterly basis, an amount equal to five (5%) percent of all Net Profit. "Net Profit" shall be defined, calculated and paid on a most favorable basis with any and all other parties receiving a share of the Net Profits.

6.     The right to exhibit and otherwise distribute the Film is granted for each country of the Territory, provided that in the U.S. and by means of television (other than as described in subparagraph 5(a)(ii) hereinabove), the right to so exhibit is and shall be available only to stations, systems and similar and dissimilar transmission media having valid performance licenses therefor from the American Society of Composers, Authors and Publishers ("ASCAP"). Exhibition of the Film by means of media not licensed for television by ASCAP is subject to clearance of the performing rights either from Licensor or ASCAP or from any other licensor acting for or on behalf of Licensor. In the event of a proposed sale to a television station, cable channel or other broadcaster who does not have an ASCAP license, Licensee may either negotiate a one-time fee with and to be paid to ASCAP or alternatively may negotiate a similar usage fee directly with Licensor in consideration of Licensor's waiving of the terms of this paragraph.

7.     Irrespective of any of the foregoing, it is understood that clearance by performance rights societies in such portion of the Territory as is outside of the U.S. will be in accordance with their customary practices and the payment of their customary fees.

8.     Licensor also grants to Licensee the non-exclusive, limited right to reproduce, synchronize and use the Compositions and the Masters, as recorded in the Film pursuant to paragraph 5 above, in copies of the Film in all configurations, now known or hereafter discovered, including, without limitation, DVD, DVD-ROM, and all linear and non-linear interactive systems, through any and all media and methods of distribution now known or hereafter discovered including, but not limited to theatrical, non-theatrical, television of all kinds (e.g., broadcast, satellite and cable, whether "free" or "pay" and standard or non-standard), internet transmissions and any other form of exploitation now known or hereafter devised, throughout the Territory.

9.     For the avoidance of doubt, Licensor also grants Licensee the non-exclusive limited right to use the Compositions and the Masters as synchronized in the Film in any media whatsoever now known or hereafter devised, whether capable of being viewed and/or broadcast or otherwise exhibited by means of any playback, cable or other transmission systems including but not limited to CD-I, CD-ROM, 3DO, VOD, PPV, or any other future storage, delivery and/or retrieval devices or systems; provided, however, that Licensee shall not be permitted to use a Composition or a Master in any device which does not embody the Film substantially as generally released or which is programmed in such a manner as to permit the viewer to manipulate the images and/or audio program material in a non-linear (i.e., non-sequential) progression. For the purposes hereof, the inclusion of "chapter stops" or other addressable locator codes of any kind on the applicable storage device shall not be deemed to constitute non-linear manipulation.

10.    This Agreement does not authorize or permit any use of the Compositions or the Masters not expressly set forth herein and does not include the following rights: to alter or edit the music in any way or create lyrics of any Composition and specifically the terms of this Agreement are limited to the use of the Compositions only as originally fixed in the Film (i.e., manner, placement, use) and/or in-context trailers; to parody the music or lyrics of any Composition, except as expressly provided for herein and respecting which the same shall have been approved, in writing, by Licensor; to make foreign adaptations and/or translations of the music and/or lyrics of any Composition; to use the title or subtitle of any Composition as the title of the Film; to use the story of any Composition or dramatically depict any Composition; or to make any other use of any Composition or any Master not expressly authorized hereunder; or to use any Composition or any Master for any promotional use not specifically enumerated herein. Use of any Composition or any Master for any such promotional use not specifically enumerated herein, shall require Licensor's prior written consent. Licensor reserves all rights not expressly granted to Licensee

hereunder. All rights granted hereunder, except as shall be expressly specified to the contrary, are granted on a non-exclusive basis.

11.     The recording and performing rights above granted include such rights for air, screen, television and internet trailers (and similar promotional uses), in context, but solely for the advertising and promotion of the Film. In the event Licensee desires to license the use of any Master or Composition for out-of-context advertising or promotion, the parties will in good faith negotiate the terms and conditions of such license.

12.     The recording and performing rights hereinabove granted shall endure for the worldwide period of all copyrights in and to the Compositions and the Masters and any and all renewals or extensions thereof that Licensor may now own or control or hereafter own or control, without Licensee having to pay any additional consideration therefor.

13.     (a)     Licensor warrants and represents that (i) there are no actions, suits, proceedings, agreements or other impediments, actual or threatened, which would prevent or impair the grant of this license, (ii) it has the legal right, power and authority to grant this license, (iii) each Master and each Composition are original works and the exercise by Licensee of the rights granted hereunder does not, and will not, conflict with or infringe upon the rights of any other party; and (iv) except as set forth in Paragraph 5 above, there shall be no further payments required of Licensee in connection with the grant of this license and Licensor shall be responsible for all costs payable to any musician whose performances are embodied on a Master and for all costs associated with the recording of the Masters, including without limitation, all producers. Licensor hereby agrees to indemnify and hold harmless Licensee and its respective officers, directors, agents, and employees (hereinafter, the "Indemnitees") from and against any and all liabilities, damages, costs, charges, recoveries, judgments, penalties, expenses or losses of whatsoever kind or nature, actually incurred by Indemnitees (including reasonable attorneys' fees and disbursements) which may be obtained against, imposed upon or suffered by the Indemnitees or any of them, by reason of any breach by Licensor of any of its warranties or representations hereunder. In no event shall the total liability of Licensor in connection with the rights granted for the Compositions and Masters licensed hereunder exceed the consideration received by Licensor in connection with the licensing of said Compositions and Masters. Licensee will give Licensor prompt and Licensor written notice of any claim and Licensor will have the right to assume the defense thereof at Licensor's expense. Licensor's representations, warranties and indemnifications shall apply throughout the Term and shall survive the expiration of the Term hereof.

        (b)     Licensee warrants and represents that there are no actions, suits, proceedings, agreements or other impediments, actual or threatened, which would prevent or impair it from performing its duties and obligations hereunder; that it is fully empowered to enter into this Agreement and to perform its duties and obligations hereunder, that it is and shall at all times remain possessed of all rights necessary for it to completely fulfill all of its material obligations hereunder, and that its entering into this Agreement and fulfilling such obligations does not and shall not infringe upon the rights of any person whatsoever. Licensee agrees to indemnify and hold Licensor and its respective officers, directors, and employees harmless from and against any and all liabilities, damages, costs, charges, recoveries, judgments, penalties, expenses or losses of whatsoever kind or nature, actually incurred by Indemnitees (including reasonable attorneys' fees and disbursements) which may be obtained against, imposed upon or suffered by Licensor, by reason of any breach by Licensee of any of its warranties or representations. Licensee's representations, warranties and indemnifications shall apply throughout the Term and shall survive the expiration of the Term hereof.

14.     (a)     Licensee agrees to furnish Licensor and ASCAP with a cue sheet of the Film on execution hereof, or within forty-five (45) days after the first public exhibition of the Film, whichever is later. Licensee further agrees to furnish Licensor, with the names of Licensee's domestic and foreign theatrical distributors, its domestic and foreign home video licensee/distributor and with a schedule of foreign theatrical release dates and home video/VOD release dates.

        (b)     Licensee further agrees to furnish Licensor, not later than thirty (30) days after the initial public exhibition of the Film, with the authority to print awards DVD screeners at Licensor's expense, the photoshop file of the key art, two (2) blu-ray copies, one (1) uncompressed pro rez quicktime of the final Film with 5.1 audio and LTRT fold down, and one (1) unlocked DCP copy of the Film all for awards

promotional screenings and viewings ("Screening Materials").  Licensee further agrees it shall deliver to Licensor ten (10) posters and fifty (50) commercial copies of the best quality DVD version of the Film (e.g., Blu-Ray Disc) and one-sheets, within forty-five (45) days after the initial release of the Film, all for private non-commercial use.

(c) Licensee grants to Licensor the right to use the key art, Photoshop file containing the key art, and the billing block of the Film in and in connection with any "score album" which in whole or in part embodies music licensed hereunder and included in the soundtrack of the Film, and in the marketing and promotion of such album.  In the event Licensee does not have the absolute and unrestricted right to grant such right to Licensor, Licensee hereby licenses whatever rights it has in such key art, the Photoshop file containing the key art, and/or the billing block and shall assist Licensor in obtaining whatever additional licenses are necessary for such intended use.  Licnesee further agrees to create a clear and discernable link to the films soundtrack on the homepage of any website created for the film.

(d) Licensee acknowledges and understands that Licensor may have to guarantee to certain artists who perform on the score that their contribution will qualify for awards consideration from, among other entities, AMPAS. Consequently, Licensee acknowledges it is of critical importance to this agreement that licensee delivers to Licensor, within seven (7) days of request by email, a word document containing all final screen credits as they appear in the film and one (1) uncompressed pro Rez QuickTime file containing the final picture, final 5.1 audio with LTRT fold down and final credits both to be used for the academy qualifying screenings and viewings pursuant to AMPAS rules and requirements to qualify the music.  Licensee agrees to provide the uncompressed Pro Rez file and word document and Licensor agrees to coordinate and arrange the appropriate academy music qualifying screenings pursuant to AMPAS guidelines as Licensor may see. Licensee further agrees to effectuate and allow Licensor the authority to sign off on any necessary forms that may be required to qualify the Music.

15. (a) Without limiting or affecting the rights or remedies which Licensor may have under this agreement or at law, with respect to Licensee's obligations under this Agreement, it is agreed that in the event of a default or breach on the part of Licensee other than for the nonpayment of any monies whatsoever due to Licensor under this Agreement, Publisher will notify Licensee in writing of such default or breach and Licensee shall have thirty (30) days from receipt of such notice in which to cure such default or breach.  If such breach or default is not curable or if not cured within said thirty (30) day period, this Agreement shall automatically terminate.

(b) Notwithstanding anything to the contrary contained in this Agreement, in the event the license fee set forth in Paragraph 5(a) shall be paid in full when due and payable, Licensor shall not be entitled to terminate or rescind this Agreement nor seek injunctive relief; or otherwise interfere with the production, promotion or distribution of the Film and Licensor's sole right shall be to seek the recovery of money damages at law; provided, however, that Licensor hereby reserves the right to injunctive relief in respect of any use of any Composition and/or any Master in any service, program, medium, device or otherwise (e.g., a video game, out-of-context trailer) the rights to which are not specifically granted to Licensee by Licensor under this Agreement.

(c) The termination of this Agreement for failure to pay the license fee set forth in Paragraph 5(a) when due and payable and/or the termination of this Agreement pursuant to paragraph (b) immediately above shall render the further exhibition of the Film actionable as an act of copyright infringement fully subject to the remedies provided by the Copyright Act, Title 17, of the United States Code, together with other legal and equitable remedies available to Licensor.

(d) It is acknowledged that Licensee's failure to deliver the items set forth in subparagraph 14(b) (except the ten (10) posters), The Cue Sheet in 14(a), and to properly adhere to, enforce, and if needed make any required corrections to the items in 19(a) in a timely manner will cause Licensor to incur substantial economic damages and losses of types and in amounts which are impossible to compute and ascertain with certainty and that liquidated damages represent a fair, reasonable and appropriate estimate thereof. Accordingly, in the event that Licensee fails to deliver and/or correct such items by the deadlines set forth in subparagraphs 14(a), 14(b), 14(d) and 19(a) (with a five (5) business day right to cure upon Licensee's receipt of written notice [e.g, email] of such default), in lieu of actual damages for such delay and/or nondelivery, provided that such delay is not cause by an event of force majeure (as commonly understood in the U.S. motion picture industry), Licensee agrees that liquidated

damages may be assessed and recovered by Licensor in the event of a delay in the delivery of one or more of such items without Licensor being required to present any evidence of the amount or character of actual damages sustained by reason thereof, in the amount of Four Thousand Five Hundred Dollars ($4,500) per week that one or more of such items are not delivered to Licensor. Such liquidated damages are intended to represent estimated actual damages and are not intended as a penalty.

16.    Licensor may assign this agreement and any of its rights hereunder in whole or in part to any person which controls, which is controlled by, or which is under common control with, Licensor or which is in partnership with Licensor and/or any of its affiliates, or to any person acquiring all, or a substantial part of, Licensor's stock and/or assets or with whom Licensor may merge. Licensee may assign this Agreement (in whole, but not in part) and all of its rights hereunder to any third party, without the prior written consent of Licensor, but such assignment shall not be effective against Licensor until Licensor receives written notice of such assignment which notice shall contain at least the name and address of the assignee

17.    This Agreement has been entered into and delivered in the State of New York, and the validity, interpretation and legal effect of this Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York. Only the New York courts (state and federal) will have jurisdiction over any controversies regarding this Agreement and the transactions contemplated by this Agreement; any action or other proceeding which involves such a controversy will be brought in those courts, in New York County, and not elsewhere. Licensor and Licensee hereby irrevocably submit to the jurisdiction of the New York courts (state and federal) in any such action or proceeding and irrevocably waive any right to contest the jurisdiction (in rem or in personam) or power or decision of that court within or without the United States other than appropriate appellate courts. Licensor and Licensee also irrevocably waive any defense of inconvenient forum to the maintenance of any such action or proceeding. Any process in any such action or proceeding may, among other methods, be served upon Licensor or Licensee by delivering it or mailing it, by registered or certified mail, directed to the address specified on page 1 of this Agreement. Any such delivery or mail service shall be deemed to have the same force and effect as personal service within the State of New York.

18.    All notices hereunder required to be given to Licensee shall be sent to Licensee at the address mentioned herein or to such other address as Licensee may hereafter designate by in writing to Licensor. All notices and payments hereunder required to be made to Licensor shall be sent to Licensor at the following address or to such other address as Licensor may hereafter designate by notice in writing to Licensee:

> Sugar Bear Deluxe Music Publishing LLC.
> 332 Bleecker Street, 9F
> New York, NY 10014
> Attn: Film Soundtracks
> EM: info@therumormill.com

Licensee shall send a courtesy copy of each notice sent to Licensor hereunder to Pryor Cashman LLP, 7 Times Square, New York, New York 10036-6569, Attn: W. Wilder Knight, II, Esq., but Licensee's failure to send such courtesy copy shall not constitute a breach of this agreement or impair the effectiveness of the notice concerned. Licensor shall send a courtesy copy of each notice sent to Licensee hereunder to Dakota Group LTD 38 E 1st St, New York, NY 10003, but Licensor's failure to send such courtesy copy shall not constitute a breach of this agreement or impair the effectiveness of the notice concerned.

19.    (a)    Licensee shall accord the following on-screen credit as a Main Title Credits, on a separate and distinct card, in the main credits of the Film, having a size, type, font and duration no less prominent than any key department head except the Director and in the same group of main title credits accorded to the Director or producer or any other personnel for the Film but not later than Fourth (4th) position; (b) in all paid advertising, wherever and whenever the Director or producer or any other personnel are credited in such paid advertising; (c) on billboards, "one-sheets" and/or videogram packaging for the Film, in the credit block, wherever and whenever a complete credit block appears; and (d) for the avoidance of doubt, in the billing block. Notwithstanding the foregoing, in the event any so-

called "excluded advertising" for the Film is created, the Composer and score shall receive the credit specified below in such excluded advertising, including, without limitation "For your Consideration", award nomination, congratulatory ads or similar advertising in which the honoree(s) or nominee(s) are mentioned/eligible. Without limiting the foregoing, it is agreed that in the event Licensee sends any screener as a "For your Consideration", award nomination, or other similar purpose, the Composer and score, shall be prominently mentioned in the same manner as the Film, Director, etc.  Licensor shall have the right to approve press releases and press kits, which approval shall not be unreasonably withheld or delayed.  The credit shall be exactly as follows:

## "MUSIC BY J. RALPH"
(please note the space after the period and before "Ralph")

(b)      Licensee shall accord the Compositions and Masters screen credit in the music section of the end credit crawl of the Film exactly as follows:

Score Composed by J. Ralph

FEATURING PERFORMANCES BY DAVID GARZA

Produced, Arranged & Orchestrated By J. Ralph
Co-Produced & Orchestrated by Arthur Pingrey
Mixed and Engineered by J. Ralph
Co-Mixed & Engineered by Arthur Pingrey
2nd Engineer - Brian Binsack
Music Editor – Arthur Pingrey
Studio Coordinator - Guy Rabinowitz
Recorded at The Theater, New York City April, 2015

Additional Music by The Rumor Mill

SOUNDTRACK AVAILABLE ON RUMOR MILL RECORDS

(c)      Licensor and Composer shall receive the credits provided herein, and with the exception of only one additional credit "Executive Music Supervision by Bonnie Greenberg" absolutely no other music credits or title cards of any kind will be accorded to any other party without Licensor's prior written consent.

20.      In the event of Licensee's dissolution or the liquidation of its assets, or the filing of a petition in bankruptcy or insolvency, or for an arrangement or reorganization, by, for, or against Licensee, or the appointment of a receiver or a trustee for all or a portion of Licensee's property, or if Licensee makes an assignment for the benefit of creditors or commits any act for, or in, bankruptcy or becomes insolvent, then at any time after the occurrence of any such event, in addition to any other remedies under this Agreement or otherwise, Licensor shall have the right to terminate the Term of this Agreement, without in any manner affecting any rights or interests previously granted to Licensor hereunder.

21.      This Agreement contains the entire understanding of the parties to this Agreement relating to the subject matter of this Agreement and cannot be modified or terminated except by an instrument signed by authorized officers of both Licensor and Licensee.  All prior and contemporaneous conversations, negotiations, agreements, and alleged agreements, representations, covenants and warranties concerning the subject matter of this Agreement are merged herein.  This is a fully-integrated agreement. A waiver by either Party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future, or of any subsequent breach thereof.  All remedies, rights, undertakings, obligations, and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party, whether expressed herein, or otherwise.

IN WITNESS WHEREOF, the parties have caused the foregoing to be executed as of the date first above written.

Sugar Bear Deluxe Music Publishing LLC

By:_____
    **Licensor**

Its (title):_____

Please Print Name:_____

ACCEPTED AND AGREED TO:

By:_____
    **Licensee**

Its (title):_____

_____
**Please Print Name of Signatory**

**SCHEDULE A**

to the Agreement dated as of        by and between Sugar Bear Deluxe
Music Publishing LLC and

TITLE OF COMPOSITIONS/MASTERS

First Composition/First Master: t/b/d

Second Composition/Second Master: t/b/d

Third Composition/Third Master: t/b/d

Fourth Composition/Fourth Master: t/b/d

[etc.]

<u>SCHEDULE B</u>
to the Agreement dated as of by and between Sugar Bear Deluxe
Music Publishing LLC and

**Delivery Materials**

1. Fully edited, mixed, 24bit 48K AIFF time-code stamped stereo files of the Master Recordings.

2. No written music manuscript of score will be delivered as Licensee represents there is no written music manuscript of score.